UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KEITH L. MARKEY, M.D., P.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Civil Action No.  SA-11-CA-1075-XR |
| | ) |
| AETNA HEALTH INC., | ) |
| | ) |
| Defendant. | |

## ORDER

On this day, the Court considered Plaintiff's Motion to Remand (Docket No. 2). For the following reasons, the Court DENIES the Motion.

### I. Background

**A. Factual Background**

On April 2, 1997, medical service provider Keith L. Markey, M.D., P.A. ("Plaintiff"), entered into a contract with health insurance provider Aetna Health Inc. ("Defendant"), formerly known as Aetna Health Plans of Texas, Inc. d/b/a Aetna U.S. Healthcare. Pl.'s Orig. State Ct. Pet. ¶ 6 (Docket No. 1, Ex. B).  The contract, titled Specialist Physician Agreement, stated that Plaintiff would provide covered medical services to individuals covered by or enrolled in certain health benefit plans and that Defendant would pay Plaintiff for services rendered according to a price term promulgated by Defendant.  *Id.*  Plaintiff alleges (1) that Defendant failed to correctly pay for services rendered according to the contract, and (2) that Defendant failed to timely pay claims within the Texas Insurance Code's statutory timelines.  *Id.* at ¶ 10.  Plaintiff asserts violations of the Texas Prompt Pay Act (TPPA), codified in Chapters 843 and 1301 of the Texas Insurance Code, and seeks the damages available to him under the Act, including unpaid contract sums, statutory penalties, statutory interest, attorney's fees and court costs.  *Id.* at  ¶¶ 18-22.

**B. Procedural Background**

Plaintiff filed a petition in the County Court at Law Number Three of Bexar County, Texas on September 7, 2011. *See* Pl.'s Orig. State Ct. Pet. (Docket No. 1, Ex. B). Defendant removed the case to this Court on December 15, 2011, claiming that the court has federal question jurisdiction because some of Plaintiff's claims are completely preempted by ERISA. Def.'s Notice of Removal ¶ 7 (Docket No. 1). Although removal took place more than thirty days after Defendant was served with the state court petition, Defendant argues that removal was nonetheless timely because the case became removable for the first time on November 16, 2011, when Plaintiff emailed two Excel spreadsheets to Defendant that detailed the specific medical claims at issue in the case. *Id.* at ¶ 4. Plaintiff filed this motion to remand (Docket No. 2) on January 13, 2012, and Defendant filed its response in opposition to the motion (Docket No. 4) on February 7, 2012.

## II. Removal Standard

A party may remove an action from state court to federal court if the federal court possesses subject matter jurisdiction over the action. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* (citations omitted). Removal jurisdiction is determined "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Any doubts regarding the propriety of removal jurisdiction should be resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Once an action is removed, a plaintiff's voluntary amendment to the complaint will not necessarily defeat federal jurisdiction. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009). Rather, it is within the district court's discretion whether to remand the case to state court. *Id.* However, while the district court has discretion, it may not remand if the defendant demonstrates the presence of a substantial federal claim. *Id.* at 528-29 (quoting *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)).

Here, Defendant asserts that removal was proper because Plaintiff's petition raises a federal question. Specifically, Defendant alleges that the Employee Retirement Income Security Act (ERISA) completely preempts at least one of Plaintiff's state-law claims because the medical claim at issue was denied based upon a coverage determination within the scope of ERISA. Thus, whether

this Court has jurisdiction will turn on the determination of whether ERISA preempts any of Plaintiff's medical claims.

### III. ERISA Preemption

**A. Legal Standard**

Any state-law cause of action that falls within the scope of ERISA's civil enforcement provision is completely preempted and, therefore, is removable to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).[1] To determine if any of Plaintiff's claims fall within the scope of ERISA, and are thus preempted, this Court can look to the Fifth Circuit's holding in *Lone Star*, 579 F.3d 525, for guidance.

In *Lone Star*, the Fifth Circuit distinguished between "right of payment" claims, which are preempted by ERISA, and "rate of payment" claims, which are not preempted. *Id.* at 530-31. A claim is a "right of payment" claim, and thus preempted by ERISA, if it entails the determination of whether a particular medical service is covered under a benefit plan. *Id.* at 530. A claim is a "rate of payment" claim, on the other hand, when "a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment." *Id.* at 532.

A partially paid claim does not necessarily signify a "rate of payment" claim. *Id.* at 533. Rather, to determine the nature of a claim, a court must look to the claim's constituent medical procedures. If the claim consists of a single medical procedure, then partial payment may indeed suggest an error in the contractual rate of payment and, as a result, the claim would not be preempted by ERISA. *Id.* However, if the partially paid claim "encapsulates multiple procedures only some of which were covered, and partial payment thus resulted from a denial of benefits under the plan, the claim may be preempted." *Id.*

The *Lone Star* holding specifically addresses the interplay between the TPPA and ERISA as well:

> A TPPA remedy only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is "payable"-whether there has been a denial of benefits

---

[1] ERISA's civil enforcement provision states:
    A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1132(a)(1)(B).

because there is a lack of coverage. Again, where claims do not involve coverage determinations, but have already been deemed "payable," and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply.

*Id.* at 532.

Thus, whether a federal question exists in this case, and thus whether this Court has jurisdiction, will turn on whether at least one of Plaintiff's claims involves a coverage determination.

## B. Analysis

### 1. Preemption

Upon analysis of the claims at issue in this action, it is clear that at least one coverage determination will be necessary. The spreadsheets that Plaintiff sent to Defendant on November 16, 2011, detail the specific medical claims at issue in the case. *See* Claim Spreadsheet 2-A and Claim Spreadsheet 2-B (Docket No. 4, Exs. 2-A and 2-B). The first spreadsheet, Exhibit 2-A to Defendant's Response, lists all of the medical claims at issue, while the second spreadsheet, Exhibit 2-B, breaks each medical claim down into constituent claims. In the second spreadsheet, Plaintiff lists a claim that was completely denied by Defendant. Specifically, Plaintiff claims that on March 20, 2008, he provided a service to patient PS at a contracted rate of $1,200 for which he received no payment from Defendant. *See* Claim Spreadsheet 2-B (Docket No. 4, Ex. 2-B). Defendant asserts that Plaintiff's claim was denied in its entirety because the procedure involved the use of an assistant surgeon, which, according to Defendant, was not covered under the patient's plan. Aff. of Jay Tidwell ¶ 5 (Docket No. 4, Ex. 5). Thus, the Court will have to conduct a coverage determination to resolve Plaintiff's claim. Since Plaintiff's claim involves the "right of payment" it is preempted by ERISA and, as a result, a federal question arises.

Plaintiff contends that federal question jurisdiction nonetheless cannot exist because no federal question has been pled. Pl.'s Mot. to Remand ¶ 4.4 (Docket No. 2). In support of his contention, Plaintiff cites *Trotter v. Steadman Motors, Inc.*, 47 F. Supp. 2d 791 (S.D.Miss. 1999), where the plaintiff testified to facts that could have supported a claim under the federal Truth-in-Lending Act (TILA). In *Trotter*, since the plaintiff did not actually plead a claim under the TILA, but only under state law, the district court held that the testimony could not support federal jurisdiction because no federal claim had been pled. *Id.* at 793.

While perhaps similar in some aspects, there is an important distinction between *Trotter* and the present action. Unlike ERISA, the TILA does not completely preempt state law. *See, e.g.*, *McCrae v. Commercial Credit Corp.*, 892 F.Supp. 1385, 1386-87 (M.D.Ala. 1995) (holding that the complete preemption doctrine does not apply to the TILA). Thus, a plaintiff has the option to choose whether to bring a claim under the TILA or its state law equivalent.

ERISA, however, *does* completely preempt state law. *See Davila*, 542 U.S. at 209. Therefore, any complaint that alleges a state-law cause of action falling within ERISA's enforcement provision is automatically converted into a complaint stating a federal claim. *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Thus, "even if the plaintiff did not plead a federal cause of action on the face of the [state] complaint, the claim is 'necessarily federal in character' if it implicates ERISA's civil enforcement scheme." *Lone Star*, 579 F.3d at 529 (quoting *Giles*, 172 F.3d at 336-37).

In *Lone Star*, the plaintiff Lone Star intended to assert only state-law claims but mistakenly included claims for which coverage was denied. This Court permitted Lone Star to amend the complaint to dismiss those claims that involved a denial of coverage. And the amended complaint further expressly alleged that Lone Star was bringing claims only for clean/payable claims – that "Aetna has found the claims filed by Lone Star to be valid and covered under each respective insurance plan and accordingly made a partial payment for each claim." *See* 07-CV-848-XR (W.D. Tex.), docket nos. 21, 29. The Court then ordered a remand because no federal claims remained pending. But the Fifth Circuit held that ERISA would nevertheless preempt any claims that, as a factual matter, involved claims denied in whole or in part based on a coverage determination, and remanded for this Court to make the determination whether any claims involved a coverage determination. Thus, this case cannot be distinguished from *Lone Star* based on the fact that the pleadings expressly allege only state-law claims.

Here, Plaintiff has alleged a cause of action that falls within ERISA's enforcement scheme and, as a result, ERISA preempts the state claim. Consequently, although Plaintiff pled his claim under state law, the claim is "necessarily federal in character" and this Court has jurisdiction.

Now that the Court has established that a basis for removal exists, the Court must determine if Defendant's removal was timely.

**2. Timeliness**

A defendant must remove an action within thirty days of receiving the initial pleading setting forth the claim for relief. 28 U.S.C. § 1446(b). If the case stated by the initial pleading is not removable, a defendant may remove the case within thirty days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is . . . removable." *Id.* To start the thirty-day time limit running, the information supporting removal must be "unequivocally clear and certain." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

Here, neither party disputes that Plaintiff's original petition was not removable. *See* Pl.'s Mot. to Remand ¶ 3.3 (Docket No. 2) and Def.'s Resp. in Opp'n at p. 13 (Docket No. 4). Since the petition included only a broad allegation that Defendant violated the Texas Insurance Code and contained no information regarding the particular claims at issue in the case, Defendant had no way of ascertaining whether any of the individual claims were in fact preempted by ERISA. Thus, the thirty-day time limit did not begin to run when Defendant was served with the petition.

However, as discussed *supra*, a federal question did arise when Plaintiff sent Defendant the spreadsheets detailing the specific claims at issue in the case. Since the claim details in the spreadsheets showed that at least one of the medical claims in the case involved a coverage determination, see Claim Spreadsheet 2-B (Docket No. 4, Ex. 2-B), the spreadsheets made it "unequivocally clear and certain" that a federal question existed. Thus, upon receipt of the spreadsheets on November 16, 2011, Defendant was notified for the first time that the case was removable and the thirty-day time limit began to run. Because Defendant filed its notice of removal within the thirty-day time limit on December 15, 2011, removal was timely.

Plaintiff contends that removal was nonetheless untimely because a medical claim spreadsheet was sent to Defendant several months before the petition was filed in state court. Pl.'s Mot. to Remand ¶ 5.2 (Docket No. 2). Plaintiff argues that since Defendant received the spreadsheet before the case was filed, Defendant had already been made aware of the removable nature of the case and, as a result, the thirty-day time limit should have started running on the date Defendant was served with the petition. *Id.*

The Court finds Plaintiff's argument unpersuasive. The Fifth Circuit has unequivocally held that in order to trigger the thirty-day time limit an "other paper" must be received by a defendant *after* that defendant has already received the initial pleading. *Chapman v. Powermatic, Inc.*, 969

F.2d 160, 164 (5th Cir. 1992). Therefore, in this action, Defendant's receipt of the spreadsheet before the case was filed in state court could not have been sufficient to put Defendant on notice that the petition alleged a federal question.[2] As a result, the thirty-day time limit did not begin to run when Defendant was served with the petition. Rather, the time limit began to run when Defendant became aware of the specific claims at issue in the case upon receipt of the spreadsheets on November 16, 2011. As a result, removal was timely.

### IV. Supplemental Jurisdiction

Having found that the Court has jurisdiction to hear at least one of the claims at issue in Plaintiff's case, the Court must now determine whether it has jurisdiction to hear Plaintiff's accompanying claims that arise solely under state law. In order to make such a ruling, the Court must determine (1) if it has supplemental jurisdiction over Plaintiff's state-law claims and, if so, (2) if it should properly exercise its supplemental jurisdiction. For the following reasons, the Court finds that it has supplemental jurisdiction over the entire case and that it is appropriate to exercise supplemental jurisdiction over all of Plaintiff's state-law claims.

**A. Supplemental Jurisdiction Over State-Law Claims**

A court has supplemental jurisdiction over all claims that "form part of the same case or controversy" as the claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). The Supreme Court has provided further guidance, holding that "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here, all of Plaintiff's claims arise from the same contract with Defendant. Pl.'s Orig. State Ct. Pet. ¶ 6 (Docket No. 1, Ex. B). Since all of the claims stem from the same agreement between the same parties, the claims all derive from a common nucleus of operative fact. Thus, this Court has supplemental jurisdiction over Plaintiff's state-law claims.

---

[2] Thus, the parties' disagreement as to the specific date the spreadsheet was originally sent, see Pl.'s Mot. to Remand ¶ 5.2 (Docket No. 2) and Def.'s Res. in Opp'n at p. 12 (Docket No. 4), will make no difference to the ruling on this motion because any "other paper" under § 1446(b) must be received after the initial pleading.

**B. Proper Exercise of Supplemental Jurisdiction**

Having found that the Court has supplemental jurisdiction, the Court must now determine whether to properly exercise supplemental jurisdiction over all of Plaintiff's state-law claims. A district court may decline to exercise supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When determining whether the exercise of supplemental jurisdiction would be appropriate, a district court should consider "the principles of economy, convenience, fairness, and comity." *Cohill*, 484 U.S. at 357. To determine whether to exercise supplemental jurisdiction over Plaintiff's state-law claims, the Court will first conduct an analysis of the factors enumerated in § 1367(c) and will then consider the principles mentioned by the Supreme Court in *Cohill*.

**1. 28 U.S.C. § 1367(c)**

***a. Novel or Complex Issue of State Law.*** A court may decline to exercise supplemental jurisdiction over a claim if it raises a novel or complex issue of state law. § 1367(c)(1). Here, Plaintiff's motion to remand does not suggest that any of the TPPA claims at issue are so novel or complex that supplemental jurisdiction would be inappropriate. Instead, Plaintiff's motion suggests just the opposite. Plaintiff states that "there are few decisions interpreting [the TPPA claims] in the context in which they may arise in this case." Pl.'s Mot. to Remand ¶ 6.3 (Docket No. 2). Rather than suggesting that this case presents a novel issue, Plaintiff's statement suggests that courts have already interpreted the TPPA and, moreover, that a few courts have already addressed the TPPA in this same context.[3] Additionally, Plaintiff points to nothing to suggest that the TPPA issues in this case are extraordinarily complex. Instead, the face of the petition seems to imply that the disposition

---

[3] At least one other federal district court has found that it could properly hear claims arising under the Prompt Pay Act when at least one of the plaintiff's non-Prompt Pay Act claims was preempted by ERISA. *See Spring E.R., LLC v. Aetna Life Ins. Co.*, Civ. A. No. H-09-2001, 2010 WL 598748 (S.D.Tex. February 17, 2010).

of the TPPA claims will involve the relatively straightforward task of determining whether Defendant timely and correctly paid claims for medical services rendered by Plaintiff. *See* Pl.'s Orig. State Ct. Pet. ¶¶ 10-12 (Docket No. 1, Ex. B). Thus, the Court finds that there are no new or complex issues of state law in this case that would compel the Court to decline supplemental jurisdiction.

***b. Predominating State-Law Claims.*** If state-law claims substantially predominate over federal claims, a district court has the discretion to decline supplemental jurisdiction over the state-law claims. § 1367(c)(2). Plaintiff contends that the TPPA claims "clearly" predominate in this case. Pl.'s Mot. to Remand ¶ 6.3 (Docket No. 2). The Court disagrees.

As discussed *supra*, claims involving a "rate of payment" determination will generally be governed by state law while claims involving the "right of payment," including a medical claim where only a single constituent procedure involves the "right of payment," will be preempted by ERISA. *See Lone Star*, 579 F.3d 525. Because Plaintiff has broken each of his medical claims down into the costs of constituent procedures, see Claim Spreadsheet 2-B (Docket No. 4, Ex. 2-B), the Court can attempt to ascertain the nature of the medical claims at issue in this case.

In the second spreadsheet, Exhibit 2-B to Defendant's Response, Plaintiff lists the contracted rate for each medical service provided and also lists the total amount of payment received for each service. Upon analysis, it appears that there are several entries in which Plaintiff alleges that he has received no payment whatsoever for services rendered. Specifically, the Court can count at least eight entries, in addition to the entry that Defendant highlighted concerning patient PS, where Plaintiff claims to have received no payment from either Defendant or from the patient.[4] Because Plaintiff's claims allege complete nonpayment, they may very well involve coverage determinations and would therefore be preempted by ERISA. As a result, it appears that this case contains a mixture of both federal and state claims and, consequently, the Court cannot find that state law issues substantially predominate to the extent that would justify declining supplemental jurisdiction.

---

[4] These entries are: Patient VO, CPT Code 20610, Service Date 7/29/2008; Patient VO, CPT Code 20610, Service Date 8/5/2008; Patient JB, CPT Code A4570, Service Date 8/18/2008; Patient MP, CPT Code A4570, Service Date 10/1/2007; Patient CH, Service Code 99213, Service Date 6/10/2008; Patient FP, CPT Code 29871, Service Date 4/24/2007; Patient ML, CPT Code 99058, Service Date 12/21/2007; Patient ML, CPT Code A4570, Service Date 12/21/2007. *See* Claim Spreadsheet 2-B (Docket No. 4, Ex. 2-B).

*c. All Federal Claims Dismissed.* A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. § 1367(c)(3).

Here, the court has not yet dismissed any of Plaintiff's federal claims so the exception is inapplicable. In his motion to remand, Plaintiff nonetheless alleges that this case "is clearly one that falls within the general rule that, with no federal issues in sight long before trial, remand of all state law claims is proper." Pl.'s Mot. to Remand ¶ 6.4 (Docket No. 2). Plaintiff's contention fails to take into account the federal nature of this case. While the face of Plaintiff's petition raises no federal issue, at least one federal question was raised when Plaintiff identified the specific medical claims at issue in the action.

Therefore, since not all federal claims have been dismissed from the lawsuit, and in light of the Court's analysis of the other factors listed in § 1367(c), the Court finds that there is no compelling reason to decline jurisdiction over any of Plaintiff's claims at this time.[5]

**2. *Cohill* Principles: Economy, Convenience, Fairness, and Comity**

Consideration of the principles of economy, convenience, fairness, and comity further supports the Court's decision to retain jurisdiction over the entire action. The factors of economy and convenience weigh heavily in favor of exercising supplemental jurisdiction over the entire action. If the Court chose to remand Plaintiff's state-law claims, it would splinter the litigation into two separate forums. Requiring the parties to manage two different lawsuits in two different forums would force both sides to expend significantly more time, money, and effort than by having the parties litigate the entire action before this Court. Thus, exercising supplemental jurisdiction over all of Plaintiff's state-law claims would be significantly more economical and convenient for both parties.

Likewise, the principles of fairness and comity favor the exercise of supplemental jurisdiction. Plaintiff asserted, inadvertently or not, a federal claim against Defendant and, as a result, Defendant had the statutory right to remove the case to federal court. It would be unfair for the Court to subvert Defendant's statutory right by forcing it to fight two separate legal battles in two different forums without a compelling justification. While Plaintiff would prefer to argue his

---

[5] The Court is aware of no other exceptional circumstance that would compel it to decline jurisdiction pursuant to § 1367(c)(4).

case in state court, the holding is nonetheless fair to him as well because he will still have the opportunity to fully and fairly argue his case, albeit in a federal forum.

Therefore, after considering the impact of removal on both parties, the Court finds that it is appropriate to exercise supplemental jurisdiction over all of Plaintiff's state law claims. Should the Court ultimately dismiss or otherwise resolve all federal claims, the Court will reconsider whether remand of any remaining state-law claim is appropriate.

## V. Conclusion

Because the medical claim spreadsheets provided, for the first time, unequivocally clear and certain information demonstrating that at least one of Plaintiff's medical claims involves a coverage determination and is therefore preempted by ERISA, the Court finds that it has federal question jurisdiction and that removal was proper.

The Court further finds that it has supplemental jurisdiction over any state-law claims and that it is appropriate to exercise supplemental jurisdiction over all of Plaintiff's state-law claims. Moreover, denying remand is appropriate because additional preempted claims may be identified.

Plaintiff's Motion to Remand (Docket No. 2) is DENIED.

It is so ORDERED.

SIGNED this 29th day of February, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE